RECREATION CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20928.    Promugated March 11, 1929.

*G. N. Bebout, Esq.*, and *C. E. Mounteer, C. P. A.*, for the petitioner.
*E. W. Shinn, Esq.*, for the respondent.

## OPINION.

Van Fossan: Petitioner deducted and respondent disallowed as an ordinary and necessary expense for the year ending April 30, 1921, an item of $49,190, the amount representing the par value of certain stock issued to one of its stockholders pursuant to the reso-

lution of its board of directors April 16, 1920, quoted in full in the findings of fact. Said stock was voted "as compensation to him for the executive services heretofore rendered to the company without stipulated salary." The services to which reference was made began in 1916, when the company was expanding its activities, and consisted particularly of negotiations conducted by Heddon in securing the extension of a lease from a 40-year term to a 99-year term; his assistance in floating a bond issue; the sale by Heddon to influential persons of $100,000 of petitioner's stock; arranging for favorable credit terms on equipment purchased, and assisting in adjusting relations between petitioner and its creditors. Substantially all of these services were rendered during 1916, 1917, and 1918. There is no evidence from which we can draw any conclusion of fact as to the nature, extent or value, if any, of Heddon's services subsequent to 1918. The inference is that they were minor or negligible.

When Heddon's active assistance was first enlisted there was an oral understanding between him and the Hustons that if the business proved successful Heddon would be appropriately compensated. Whether this understanding attained to the dignity of a binding legal obligation it is not necessary to decide. However, no terms were fixed; no standards of value were set up; no payment was to be made unless and until success was achieved; there was no obligation that could be accrued each year on petitioner's books. Cf. *Adams, Payne & Gleaves,* 9 B. T. A. 1076. The obligation first became fixed in 1920, pursuant to the resolution of the board of directors. Though the compensation was voted in 1920, the facts show that there was no causal or direct relation between it and the services rendered in the taxable year. It was actually in consideration of services rendered in prior years and by no stretch of reasoning could be held, on the record before us, to be reasonable compensation for services rendered in the year 1920. See *Green Oil Soap Co.,* 3 B. T. A. 467; *Roubaix Mills, Inc.,* 7 B. T. A. 878.

Furthermore, it is fundamental that to be allowable not only must the expense be incurred in the taxable year, but, if in compensation for services, it must be reasonable in amount. We have considerable evidence of the nature of the services performed but we are furnished no gauge or standard by which they should be tested to ascertain their value or the reasonableness of the amount allowed. Were this the only question confronting us we would be left very largely to conjecture as to the reasonable worth of the services.

Yet another obstacle besets petitioner's path in the nature and character of the services rendered. So far as the record shows the services were chiefly of aid in perfecting petitioner's capital structure and fall within the category of capital expenditures. See *J. Alland*

*& Bro., Inc.,* 1 B. T. A. 631; *Emerson Electric Mfg. Co.,* 3 B. T. A. 932. In any event, it is impossible on the record to segregate clearly the services of a capital nature from those which might be classed as expense.

In view of our conclusion indicated above it is unnecessary to discuss the legal effect of the cancellation, on the day following its issuance to Heddon, of the stock certificate and the reissuance of the same aggregate amount to Heddon and the two Hustons in equal shares.

*Judgment will be entered for the respondent.*